**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LAMAR SHAW,                        :
                                      Civil Action No. 07-1109 (RMB)
       Petitioner,    :

       v.             :   **OPINION**

UNITED STATES OF AMERICA,    :
et al.,
       Respondents.   :

**APPEARANCES:**

Petitioner pro se                   Counsel for Respondent
Lamar Shaw                          Irene E. Dowdy
F.C.I. Fort Dix                     Asst. U.S. Attorney
P.O. Box 2000                       402 East State St., Room 430
Fort Dix, NJ 08640                  Trenton, NJ 08608

**BUMB**, District Judge

    Petitioner Lamar Shaw, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The respondents are the United States of America and Warden Samuels.

                        I.   BACKGROUND

    In 2001, Petitioner was sentenced to a term of 188 months imprisonment following conviction on narcotics charges in the U.S. District Court for the Western District of North Carolina.

Petitioner presently is confined pursuant to that conviction and sentence.

While Petitioner was confined in the Federal Prison Camp in Atlanta, Georgia, Bureau of Prisons staff issued Incident Report 1453287, charging Petitioner with (a) Conduct Which Disrupts the Security of the Institution, Most Like Code 200, Escape (Code 299/200), and (b) Receiving Money from Any Person for Any Illegal or Prohibited Purpose (Code 217).  On May 10, 2006, the Disciplinary Hearing Officer at that institution conducted a hearing.  The DHO found that the acts were committed as charged and imposed disciplinary sanctions including, <u>inter</u> <u>alia</u>, disallowance of 54 days good conduct time.  The other sanctions imposed included a recommendation for disciplinary transfer, 60 days disciplinary segregation, and 90 days loss of commissary, visiting, and telephone privileges.  Petitioner subsequently was transferred to the Federal Correctional Institution at Fort Dix, New Jersey.  Petitioner pursued his administrative remedies,[1] which were unsuccessful.

Here, Petitioner alleges that he is actually innocent of the charged offense.  He asserts that he was deprived of his

---

[1] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10, et seq. Appeal to the General Counsel is the final administrative appeal. 28 C.F.R. § 542.15(a).

constitutional right to due process under the Fifth Amendment because (1) the DHO refused to call witnesses requested by Petitioner at the disciplinary hearing, (2) there is insufficient evidence to sustain the finding that Petitioner committed a prohibited act, and (3) the DHO failed to explain adequately the basis for his finding that Petitioner committed a prohibited act. Petitioner requests return of all forfeited good time credits and restoration of his minimum classification.

After Petitioner filed this Petition, BOP staff in Atlanta determined that Incident Report 1453287 should be rewritten and reissued to Petitioner. The rewritten Incident Report charged Petitioner with the offense of Giving or Receiving Money (Code 328), a less serious offense than originally charged. The rewritten Incident Report was forwarded to BOP staff at FCI Fort Dix. On August 23, 2007, a DHO at FCI Fort Dix conducted a new hearing on the rewritten Incident Report. The FCI Fort Dix DHO found that Petitioner had committed the offense of Giving or Receiving Money and imposed sanctions including, <u>inter</u> <u>alia</u>, disallowance of 13 days good conduct time. The other sanctions included 15 days of disciplinary segregation (45 days less than the 2006 sanction) and 90 days loss of commissary privileges (the same loss of commissary privileges as under the 2006 sanctions, but no loss of visiting or telephone privileges). These sanctions supercede the sanctions imposed previously in Atlanta.

Petitioner has been advised of his right to appeal the sanctions imposed on August 23, 2007, pursuant to the rewritten Incident Report.

The BOP's SENTRY database "Inmate Discipline Data, Chronological Disciplinary Record" has been amended and now reflects only the rewritten Incident Report and related sanctions.  Petitioner's sentence has been recomputed to reflect only the loss of good conduct time resulting from the rewritten Incident Report.

As a result of the August 23, 2007, hearing, Respondents have submitted a Motion [13] to Dismiss the Petition as moot. Petitioner opposes dismissal.  Petitioner requests that the August 23, 2007, sanctions be "back-dated" to 2006, so that he will not have to wait an additional year for transfer back to his "home region."

## II.  ANALYSIS

Article III, Section 2 of the United States Constitution limits the jurisdiction of federal courts to adjudication of "cases or controversies."

> Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.  To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.  Article III denies federal courts the power "to decide questions that cannot affect the rights of litigants in the case before them," and confines them to resolving "'real and substantial controvers[ies]

>admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. To sustain our jurisdiction in the present case, it is not enough that a dispute was very much alive when suit was filed, or when review was obtained in the Court of Appeals. The parties must continue to have a "'personal stake in the outcome'" of the lawsuit.

Lewis v. Continental Bank Corp., 494 U.S. 472, 477-478 (1990) (citations omitted). See also Spencer v. Kemna, 523 U.S. 1, 7 (1998).

Because of intervening events, this Petition no longer presents "an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision," at least insofar as the Petition challenges the loss of good time credits. The hearing and sanctions challenged in the Petition have been superseded. Thus, Petitioner has suffered no constitutional injury traceable to that hearing that can be redressed by a favorable judicial decision here. A new hearing and sanction now affect the length of Petitioner's sentence. Any due process challenge to the procedures employed in that hearing must be brought in a new habeas petition following exhaustion of administrative remedies.[2]

---

[2] Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v.

5

To the extent the Petition could be construed as challenging either Petitioner's transfer or a change in his classification, these challenges are not cognizable in habeas.[3]  See Ganim v. Federal Bureau of Prisons, 235 Fed. Appx. 882, 2007 WL 1539942 (3d Cir. May 29, 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to "garden variety" transfer between federal prisons and distinguishing Woodall v. FBOP, 432 F.2d 235 (3d Cir. 2005), which held that habeas lies to challenge a decision regarding pre-release transfer to a community corrections center).  This reclassification and transfer, from a minimum-security prison camp to a low-security correctional institution, do not present such a quantum change in Petitioner's level or place of custody that they are cognizable in habeas.  See, e.g., Wardell v. Samuels, 2007 WL 3232594 (D.N.J. 2007).  But cf. Macia v. Williamson, 219 Fed. Appx. 229 (3d Cir. 2007) (habeas lies to challenge disciplinary hearing that led to loss of good time

---

Enos, 230 F.3d 627, 634 (3d Cir. 2000).  The exhaustion doctrine promotes a number of desirable goals including filtering out frivolous claims and developing a full and complete record for trial purposes; nevertheless, exhaustion of administrative remedies is not required where exhaustion would not effectuate these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000).

[3] The Court notes that nothing in the record presently before it confirms Petitioner's allegation that the transfer and change in classification resulted directly from the 2006 disciplinary hearing.

6

credits and disciplinary transfer from open prison to medium-high-security prison).

In the alternative, to the extent the challenges to Petitioner's change in custody level and place of confinement are not mooted by intervening events and are otherwise cognizable in habeas, they are meritless.  With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt v. Helms, 459 U.S. 460, 468 (1983), and Sandin v. Conner, 515 U.S. 472, 480 (1995).

Governments may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and

significant hardships" in which a state conceivably might create liberty interest).  See also Asquith v. Department of Corrections, 186 F.3d 407, 411-12 (3d Cir. 1999) (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).  It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.  Thus, there is no due process violation in these alleged sanctions.  See Marti v. Nash, 227 Fed. Appx. 148, 2007 WL 1072969 (3d Cir. 2007).

This Court expresses no opinion as to whether the 2007 DHO hearing and sanctions comport with the requirements of the Due Process Clause.

### III.  CONCLUSION

For the reasons set forth above, the Petition will be dismissed.  An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: March 7, 208